**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN MADDEN, LTD.,<br><br>               Plaintiff,<br><br>v.<br><br>ADIDAS AG, ADIDAS AMERICA, INC.,<br>and ADIDAS INTERNATIONAL<br>MARKETING BV,<br><br>               Defendants. | Civil Action No.  <u>25-2847</u><br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

Plaintiff, Steven Madden, Ltd. ("Steve Madden"), as and for its Complaint for Declaratory Judgment against Defendants Adidas AG, Adidas America, Inc. and Adidas International Marketing BV (collectively, "Adidas"), by and through its attorneys, states the following:

## NATURE OF ACTION

1.      Steve Madden brings this action for a declaratory judgment to stop Adidas' illegal and anticompetitive efforts to monopolize common design features in the fashion industry by trying to claim that any number of elements on footwear – here two non-parallel bands and a K-shape – allegedly infringe its purported Three-Stripe Mark.

2.      Specifically, Steve Madden seeks a declaratory judgment that its footwear which includes these design features, as discussed below, has not and does not infringe any possible trademark or trade dress rights that Adidas may claim in its footwear and that Steve Madden does not unfairly compete with Adidas, pursuant to 15 U.S.C. §§ 1114 and 1125(a).

3.      Steve Madden, a leader in affordably-priced footwear, manufactures, markets and sells (1) the VIENTO sneaker (pictured below, left), and (2) the JANOS sneaker (pictured below, right), both of which are low top, lace-up fashion sneakers that feature design elements comprising two non-parallel shapes.

**VIENTO Fashion Sneaker**     **JANOS Fashion Sneaker**




(hereinafter the VIENTO Fashion Sneaker design referred to as "the Divergent Band Design" and the JANOS Fashion Sneaker design referred to as "the K-Design").

4.      Different variations of two bands have been used by others in the fashion industry for many years, and shoes bearing two band designs have been offered by many different companies in footwear.

5.      Over the years, Adidas has managed to secure federal trademark registrations for the use of *three parallel stripes* in specific locations on certain items of sports clothing and shoes (which Adidas refers to as "Three-Stripe Mark").  Adidas has aggressively enforced its trademark registrations against Steve Madden and others, who it believes infringes its purported Three-Stripe Mark, which it has refused to define. Adidas' assertive enforcement measures often include suing and threatening suit against manufacturers and retailers of footwear and apparel who use any number of stripes or bands in any manner that Adidas contends is likely to cause confusion with Adidas' purported Three-Stripe Mark.

6.      Steve Madden has fallen victim to Adidas' threats for decades on more than one occasion.  Since as early as 2002, Adidas has commenced a pattern of complaining that Steve Madden's footwear allegedly infringes its Three-Stripe Mark.  Specifically, in 2002 Adidas brought two lawsuits against Steve Madden alleging that footwear with four-parallel stripes and two-parallel stripes infringed its Three-Stripe Mark.  These lawsuits were consolidated and subsequently settled as set forth in a 2003 Settlement Agreement between the parties.

7.      After the 2003 Settlement Agreement, Adidas continued to complain about Steve Madden's footwear over the ensuing decades.

8.    Now Adidas is pushing the envelope even further, complaining about the Divergent Band Design and the K-Design, when neither design includes "three-stripes" or any parallel elements.

9.    Simply put, Adidas does not own all stripes and should not be allowed to claim that it has a monopoly on all footwear that includes stripes, bars, bands or any shape having four sides—parallel, straight or not.  Tired of being targeted by Adidas with regard to footwear with design elements that bear no resemblance to Adidas' purported Three-Stripe Mark, and strongly believing that it has a right to sell footwear with the Divergent Band Design and the K-Design, because no consumer is likely to believe that the footwear including these designs is manufactured by, or otherwise associated with or approved by, Adidas, Steve Madden seeks a declaratory judgment of non-infringement and no unfair competition in this action.

## THE PARTIES

10.    Plaintiff, Steven Madden, Ltd., is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Long Island City, New York, within this Judicial District.  Steve Madden is a branded and private label company that provides a wide range of footwear, clothing and accessories, which are sold in interstate commerce in the United States including in the State of New York.

11.    On information and belief, Defendant Adidas AG is a joint stock company organized under the laws of the Federal Republic of Germany with a principal place of business at Postach 1120, Herzogenaurach, D-91072, Federal Republic of Germany.  On information and belief, Defendant Adidas AG is the owner of the federal trademark registrations, as set forth below.  On information and belief, Adidas AG has offices in New York, New York.

12.    On information and belief, Defendant Adidas America, Inc. ("Adidas America") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217.  Adidas America is wholly owned by Adidas AG and its affiliates, and within this country, Adidas America is a licensed distributor of Adidas-branded merchandise.  On information and belief, Adidas America has regular and established places of business within this Judicial District, and conducts business throughout the United States and within this Judicial District.

13.    On information and belief, Defendant Adidas International Marketing BV ("Adidas International") is a private limited liability company organized under the laws of the Netherlands with a principal place of business at Atlas Arena Offices, Afrika Building, Hoogoorddreef 9-A, 1101 BA, Amsterdam Zuidoost, Netherlands.  Adidas International is wholly owned by Adidas AG and its affiliates.

14.    An actual case or controversy exists between the parties and is currently ripe for adjudication in this District.  On April 24, 2025, Adidas filed a request to extend by 90 days the time to oppose a U.S. trademark application filed by Steve Madden for the K-Design, U.S. Serial No. 98/698,134, for footwear in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board.  Adidas, through its counsel, subsequently reached out to Steve Madden's counsel asserting that the Divergent Band Design is likely to cause confusion with Adidas' Three-Stripe Mark and requested that Steve Madden cease its sales of footwear bearing that design.  It also expressed concern about Steve Madden's K-Design, which it incorrectly described as a "two-stripe design," thereby suggesting that it infringes its purported Three-Stripe Mark.  Adidas has a long and storied history of asserting that "two-stripe designs" infringe the purported Three-Stripe Mark.  As a result of this, and other contentious

- 4 -

communications between the parties over decades regarding two-stripe (and four-stripe) designs, there exists a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality as to warrant declaratory relief.

<u>**JURISDICTION AND VENUE**</u>

15.     This action is for declaratory relief and there is an actual controversy between the parties, pursuant to 28 U.S.C. §§ 2201 and 2202.  A case or controversy exists between Steve Madden and Adidas because Adidas has accused Steve Madden of infringing its purported Three-Stripe Mark and has, in the past, taken legal action against Steve Madden following such allegations of infringement, as further described below.

16.     This Court has subject matter jurisdiction over the claims in this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, as well as under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b).  On information and belief, Defendant Adidas America is present in the State of New York, and this Court has personal jurisdiction over it, at least because it has regular and established places of business within this Judicial District, and it offers to sell and sells merchandise to customers in the State of New York.

17.     On information and belief, Defendants Adidas AG and Adidas International are alien business entities which regularly conduct business throughout the United States, and own United States trademark registrations relevant to this dispute.  On information and belief, Adidas AG and Adidas International conduct business throughout the United States and within this Judicial District.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).  Steve Madden and Adidas America are located in this District and/or do business in this District,

Adidas AG and Adidas International are aliens, and a substantial part of the events giving rise to Adidas' purported claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

19.     Steve Madden was founded in 1990, out of the trunk of its founder's car.  The company began with just $1,100, and made 500 pairs of shoes that it sold to New York City-area stores.

20.     In 1993, Steve Madden opened its first retail store and has since grown into a titan of the footwear industry.  Today, Steve Madden is one of the most well-known footwear brands—it has revolutionized fashion by bringing stylish and trendy shoes (and other products) to consumers at lower price points.  Steve Madden product lines include a broad range of contemporary styles designed to establish or capitalize on market trends, complemented by core product offerings.  Steve Madden has established a reputation for design creativity and its ability to offer quality, trend-right products at accessible price points, delivered in an efficient manner and time frame.

21.     Steve Madden sells and markets its footwear both on a business-to-business model and a business to consumer model in the United States. Steve Madden's direct to consumer business is available through its online marketplace at https://www.stevemadden.com/ and its retail stores throughout the United States. Steve Madden also sells its products through partnerships and other contractual relationships with department stores, mass merchants, off-price retailers, shoe chains, online retailers, national chains, specialty retailers, independent stores, and clubs, including major United States retailers like Nordstrom, Dillard's, Macy's and more.

22.    Many of Steve Madden's customers have been resellers of its footwear for decades, representing years of established goodwill and trust between the companies.  Steve Madden takes steps to ensure it complies with the laws of the United States, and respects the legitimate intellectual property rights of others.

23.    During Steve Madden's nearly 35 years of footwear design, the company has released a multitude of footwear in a wide variety of colors and ornamental patterns and designs.

24.    Steve Madden owns numerous trademark registrations for its footwear, clothing, and fashion accessories.  The well-known STEVE MADDEN mark appears prominently on all Steve Madden retail stores, on Steve Madden's website, and on all products Steve Madden sells, particularly its footwear, as shown below on the footbed of the JANOS Fashion Sneaker.



25.    Consumers cannot purchase Steve Madden's footwear without encountering the STEVE MADDEN trademark.

26.    Consumers purchase Steve Madden footwear because of the outstanding reputation it has earned for high quality, stylish footwear.  Steve Madden has received significant praise in the press.  *See* https://www.yahoo.com/lifestyle/5-reasons-steve-madden-company-212440321.html; https://lbbonline.com/news/steve-madden-celebrates-bold-trends-and-self-expression-in-spring-campaign-starring-tefi-pessoa; https://wwd.com/footwear-news/shoe-

industry-news/steve-madden-interview-2-billion-company-1237702800/;

https://www.nasdaq.com/press-release/steve-madden-announces-acquisition-of-almost-famous-2023-10-23; https://www.honestbrandreviews.com/reviews/steve-madden-review/;

https://www.forbes.com/sites/tylerroush/2025/05/20/home-depot-wont-raise-prices-amid-tariffs-as-these-companies-warn-of-tariff-impacts/.  The foregoing articles are attached as Exhibit B.

### A.    Designs on the Sides of Shoes

27.    There are dozens of shoe manufacturers that sell casual fashion shoes, sometimes called sneakers, in the United States, including Nike, Adidas, New Balance, Hoka, Puma, Reebok, Converse, Vans, On, Hummel, Saucony, Autry, Oliver Cabell, Diesel, Gola, Lacoste, Diadora, and Steve Madden.

28.    Due to the large amount of space available on the side quarter of sneakers – i.e., the outside of the shoe upper – many designers and manufacturers include design elements, as well as logo trademarks in this area on the shoe.

29.    Design features on this area of the shoe can include, but are not limited to, elements such as patterns, overlays, underlays, and bands, stripes or lines.

30.    The quarter may also be simply or elaborately decorated with perforations, cut-outs, embroidery, piping, or contrasting stitching, known as quarter stitching.

31.    Sneaker brands sometimes use different materials for overlays from the rest of the sneakers, often leather or polyurethane, to add depth and texture to the design of sneakers. Additionally, brands also commonly use multiple colors, materials, and patterns, to combine the overlays, and sometimes present their brand logo.

32.    Below is a sampling of sneakers or casual fashion shoes with designs or overlays on their quarter panel:

- 8 -

| Converse | Sam Edelman |
|----------|-------------|
| | |
| Hummel | Diadora |
| | |
| XTI | Vince |
| | |
| Veja | Gola |
| | |
| River Island | Le Tiger |
| | |





| Tommy Hilfiger | Franco |
|---|---|
| Paul Green | Sorel |
| Phillipp Plein | SeaVees |
| Nautica | Kizik |
| Bally | Beckett Simonon Morgen |

- 10 -

| Paul Smith | |
|---|---|
|  | |

### B.    Adidas' Purported Rights

33.    Some of Adidas' footwear, clothing and accessories are characterized by a three-stripe pattern that appears in specific positions and orientations.

34.    Adidas owns the following U.S. trademark registrations for variations of its Three-Stripe Mark design: U.S. Registration Nos. 870,136, 961,353, 1,815,956, 1,833,868, 2,016,963, 2,058,619, 2,278,589, 2,278,591, 2,284,308, 2,909,861, 2,999,646, 3,029,127, 3,029,129, 3,029,135, 3,087,329, 3,183,656, 3,183,663, 3,236,505, and 4,910,643 (collectively, "Three-Stripe Registrations").  The Three-Stripe Registrations are depicted in Exhibit A.

35.    All of Adidas' Three-Stripe Registrations feature three parallel strips of equal width and spacing.  In almost all of these registrations, Adidas describes its mark as "three *parallel* stripes…."

36.    Adidas has engaged in a systematic pattern of broadly asserting its Three Stripe Mark and Three-Stripe Registrations, contending that any number of stripes on clothing items and footwear in any orientation or positioning allegedly infringe its rights.

37.    Adidas routinely sends aggressive cease and desist letters to competitors and files lawsuits, relying on overly broad or vague interpretations of its Three-Stripe Mark to cover any orientation or positioning of the stripes or bands.

38.    Adidas also regularly files opposition and cancellation proceedings at the Trademark Trial and Appeal Board, objecting to any application/registration for marks

- 11 -

containing any number of alleged "stripes" in any orientation and/or positioning.  For example, in 2020, adidas filed an opposition to the application of Black Lives Matter Global Network Foundation, Inc. to register a yellow, three-stripe design mark for a variety of charitable and educational services (U.S. Trademark Application Serial No. 90/304,243; TTAB Opposition Proceeding No. 91284161).  Adidas later withdrew the opposition. *See* https://www.reuters.com/world/us/adidas-says-black-lives-matter-design-violates-three-stripe-trademark-2023-03-28/.

39.     Adidas' enforcement tactics are part of a strategy to intimidate competitors and seek to maintain monopoly power over any number of stripes on footwear and clothing in any orientation or positioning.

40.     For example, Adidas has taken legal action against companies that use two, four and even up to seven stripes in their designs.  *See, e.g., adidas AG, adidas Am., Inc., Adidas Int'l Mktg. BV v. Futbol Club Barcelona,* Opposition No. 91230938 (T.T.A.B.) (filed Oct. 31, 2016).

41.     In 2022, Adidas sued Thom Browne, Inc., a luxury fashion designer, in the Southern District of New York, asserting that Thom Browne's use of ***four*** horizontal bands infringed Adidas' purported Three-Stripe Mark.  *Adidas America Inc. et al. v. Thom Browne, Inc.*, Civil Action No. 1:21-cv-05615-JSR-RWL.  The trial resulted in a unanimous jury verdict in favor of Thom Browne, finding that Thom Browne's ***four*** horizontal bars are not confusingly similar to Adidas' purported Three-Stripe Mark.  The case is on appeal to the Second Circuit following the District Court's denial of Adidas' motion for a new trial.

42.     In *Adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029 (D. Or 2008), the Court found that "since 1995, Adidas has pursued over 325 infringement matters involving the Three-Stripe mark in the United States, filed more than 35 separate lawsuits for

infringement of the Three-Stripe [M]ark, and entered into more than 45 settlement agreements with companies selling infringing footwear."

**C.    Adidas' Prior History With Steve Madden**

43.    In 2002, Adidas filed suit against Steven Madden twice. One case involved Steve Madden footwear bearing four parallel stripes, and the other involved Steve Madden footwear bearing two parallel stripes.  The cases were consolidated and settled.

44.    The terms of the 2003 Settlement Agreement are confidential. The present dispute does not arise out of the 2003 Settlement Agreement.  Adidas has not alleged that Steve Madden's use of the Divergent Band Design or the K-Design is a breach of the 2003 Settlement Agreement.

**D.    The Divergent Band Design - The Viento Fashion Sneaker**

45.    On or about March 6, 2025, Steve Madden launched the VIENTO sneaker which includes the Divergent Band Design.

46.    As depicted below, the Divergent Band Design does not involve three parallel stripes of equal width, let alone any parallel stripes.



**E.    The K-Design - The JANOS Fashion Sneaker**

47.    On or about May 6, 2025, Steve Madden launched the JANOS sneaker which includes the K-Design.

48.    As depicted below, the K-Design does not involve three parallel stripes of equal width, let alone any parallel stripes.



49.    Steve Madden has used the K-Design on its footwear since May 6, 2025, and this design element has become associated with Steve Madden, represents Steve Madden as the source of the goods, and reflects the considerable goodwill that Steve Madden enjoys with the purchasing public.

50.    On August 14, 2024, Steve Madden filed an application to register the K-Design with the United States Trademark Office for footwear (U.S. Serial No. 98/698,134) (hereinafter "the K-Design Application").

51.    The K-Design Application was examined and approved for publication with no refusals.  None of Adidas' Three-Stripe Registrations were cited against it.

52.    Although the K-Design Application was filed on an intent-to-use basis, it is in use in commerce on the JANOS sneaker.  *See* https://www.stevemadden.com/collections/mens-sneakers/products/janos-white-leather (last accessed May 20, 2025).  In addition, Steve Madden plans to use the K-Design on other styles of fashion sneakers.

**F.    Adidas' Complaints About The Divergent Band Design And K-Design**

53.    On April 24, 2025, Adidas filed a request to extend the time to oppose the K-Design Application by ninety days.

54.    That same day, the Trademark Office granted the request, and the time to oppose the K-Design Application was extended to July 23, 2025.

55.    On or about May 9, 2025, Adidas contacted attorneys for Steve Madden through its lawyers alleging that Adidas' Viento shoes are likely to cause confusion with its purported Three-Stripe Mark and demanded that Steve Madden cease its sales.

56.    During that call, Adidas also expressed concern about Steve Madden's K-Design, which it characterized as a "two-stripe design," even though the K-Design does not include two stripes.

57.    On May 9, 2025, Adidas's counsel sent an email to Steve Madden's counsel summarizing the telephone discussions between the parties.

58.    There is a substantial controversy between Steve Madden and Adidas regarding whether the Divergent Band Design and the K-Design infringe Adidas' Three-Stripe Mark.

59.    No buyers or prospective buyers of Steve Madden's footwear with the Divergent Band Design and K-Design have been or are likely to be confused into mistakenly believing that Steve Madden's footwear originates with, or is affiliated with or sponsored by or approved by Adidas, because of any trademark or trade dress right of Adidas.

60.    The use of band designs on footwear is ubiquitous in the fashion industry. Consumers are not likely to associate all footwear bearing two bands with Adidas.

61.    An average consumer will perceive the difference between three stripes and the Divergent Band Design and K-Design.

62.    Steve Madden is unaware of any actual consumer confusion concerning its Divergent Band Design and K-Design on footwear, on the one hand, and Adidas' footwear, on the other hand.

- 15 -

63.     Steve Madden has, at all times, acted in good faith with respect to the facts supporting the claims in this action. Steve Madden has not attempted to capitalize on the goodwill or reputation of Adidas by using the Divergent Band Design and K-Design on its footwear.

64.     Because Adidas continues its pattern of conduct over the past two decades, asserting trademark rights against Steve Madden and creating the apprehension that it will sue Steve Madden if Steve Madden doesn't cave to Adidas' demands, an immediate, justiciable case or controversy exists such that Steve Madden is entitled to a declaratory judgement of non-infringement.

## CLAIMS FOR RELIEF

### COUNT I
**(Declaratory Judgment of Non-Infringement of Federally Registered Trademark Under 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and 15 U.S.C. § 1114 (Lanham Act))**

65.     Steve Madden repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

66.     A real and actual controversy exists between Steve Madden and Adidas as to whether the Divergent Band Design and K-Design infringe any registered trademark owned by Adidas.

67.     This cause of action arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68.     Steve Madden has not used and is not using, in interstate commerce, any reproduction, counterfeit, copy or colorable imitation of a registered trademark for the Adidas Three-Stripe design, in connection with the sale, offering for sale, distribution, or advertising of any good or services on or in connection with which such use is likely to cause confusion, to cause mistake or to deceive.

- 16 -

69.     Steve Madden is entitled to a declaration that it has not infringed, and is not infringing, any federally registered trademark owned by Adidas for the Three-Stripe design. Steve Madden has no adequate remedy at law.

## COUNT II
### (Declaratory Judgment of No Trade Dress Infringement)

70.     Steve Madden repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

71.     This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.     Steve Madden has not used and does not use a trade dress copied from and confusingly similar to the trade dress of any Adidas footwear, clothing or accessories that incorporate the Three-Stripe design, and is not using any trade dress that is causing or is likely to cause confusion, mistake or deception of purchasers and potential purchasers as to the origin, sponsorship, or approval of Steve Madden's goods by Adidas.

73.     Steve Madden is entitled to a declaration that it has not infringed, and is not infringing, any trade dress of Adidas.  Steve Madden has no adequate remedy at law.

## COUNT III
### (Declaratory Judgment of Non-Infringement of Common Law Trademark)

74.     Steve Madden repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

75.     A real and actual controversy exists between Steve Madden and Adidas as to whether the Divergent Band Design and K-Design infringe any common law trademark owned by Adidas.

76.     This cause of action arises under the common law of the State of New York.

- 17 -

77.     Steve Madden has not used and is not using, in interstate commerce, any reproduction, counterfeit, copy or colorable imitation of a common law trademark for the Adidas Three-Stripe design in connection with the sale, offering for sale, distribution, or advertising of any good or services on or in connection with which such use is likely to cause confusion, to cause mistake or to deceive.

78.     Steve Madden is entitled to a declaration that it has not infringed, and is not infringing, any common law trademark owned by Adidas for the Three-Stripe design.  Steve Madden has no adequate remedy at law.

## COUNT IV
### (Declaratory Judgment of No Unfair Competition)

79.     Steve Madden repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

80.     This cause of action arises under 15 U.S.C. § 1125(a) and the common law of the State of New York.

81.     Steve Madden has not engaged, and is not engaging, in any acts of unfair competition in connection with its advertising, marketing, distribution, or sale of clothing or accessories bearing the Divergent Band Design and/or the K-Design under the Lanham Act or under New York common law.

82.     Steve Madden is entitled to a declaration that it has not, and is not, engaging in any unfair competition with respect to its advertising, marketing, distribution, or sale of footwear bearing the Divergent Band Design and/or the K-Design. Steve Madden has no adequate remedy at law.

WHEREFORE, Steve Madden respectfully requests that judgment be entered in its favor as follows:

- 18 -

a)      Declaring that Steve Madden has not infringed any registered trademark or common law trademark owned by Adidas with respect to the Divergent Band Design and K-Design;

b)      Declaring that Steve Madden has not infringed any trade dress owned by Adidas with respect to its Three-Stripe Mark;

c)      Declaring that Steve Madden has not engaged in any acts of unfair competition in connection with its advertising, marketing, distribution, or sale of footwear bearing the Divergent Band Design and K-Design;

d)      Awarding attorneys' fees, costs and expenses to Steve Madden in connection with this case, pursuant to 15 U.S.C. § 1117; and

e)      Awarding such other and further relief as the Court deems just and proper.

Dated: May 21, 2025                          Respectfully submitted,

                                             */s/ Robert T. Maldonado*
                                             Robert T. Maldonado
                                             rmaldonado@wolfgreenfield.com
                                             Tonia A. Sayour
                                             tsayour@wolfgreenfield.com
                                             WOLF, GREENFIELD & SACKS, P.C.
                                             605 Third Avenue
                                             New York, NY 10158
                                             212.697.7890 Phone
                                             617.646.8646 Fax

                                             John L. Strand (*pro hac vice* to be filed)
                                             jstrand@wolfgreenfield.com
                                             Laney E. Flanagan (*pro hac vice* to be filed)
                                             lflanagan@wolfgreenfield.com
                                             WOLF, GREENFIELD & SACKS, P.C.
                                             600 Atlantic Avenue
                                             Boston, MA 02210
                                             617.646.8000 Phone
                                             617.646.8646 Fax

                                             *Attorneys for Plaintiff Steven Madden, Ltd.*

- 19 -